## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name **PATTERSON, DAVID**
_____
(Last)              (First)              (Initial)

E-filing

Prisoner Number    C-59234

Institutional Address    P.O. BOX 689        GW-327L    CORRECTIONAL TRAINING FACILITY

FILED
MAY 15 2008

SOLEDAD, CA    93960-0689    RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

**DAVID PATTERSON**
_____
(Enter the full name of plaintiff in this action.)

vs.

**B. CURRY, WARDEN, et al,**
_____

_____

_____

_____
(Enter the full name of respondent(s) or jailer in this action)

)
)
)
)
)
)
)
)
)
)
)
)

CV 08    Case No. _____ 2492
(To be provided by the clerk of court)

RMW

**PETITION FOR A WRIT
OF HABEAS CORPUS**
Evidentiary Hearing Requested

(PR)

ORIGINAL

### Read Comments Carefully Before Filling In

**When and Where to File**

You should file in the Northern District if you were convicted and sentenced in one of these

counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

this district if you are challenging the manner in which your sentence is being executed, such as loss of

good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were **not** convicted and sentenced in

one of the above-named fifteen counties, your petition will likely be transferred to the United States

District Court for the district in which the state court that convicted and sentenced you is located. If

you are challenging the execution of your sentence and you are not in prison in one of these counties,

your petition will likely be transferred to the district court that includes the institution

where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

__Who to Name as Respondent__

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now __and__ the Attorney General of the state in which the judgment you seek to attack was entered.

__A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE__

1. What sentence are you challenging in this petition?

    (a)    Name and location of court that imposed sentence (for example: Alameda County Superior Court, Oakland):

__COUNTY SUPERIOR  COURT__        __LOS ANGELES__

        Court                           Location

    (b)    Case number, if known ___A148830___

    (c)    Date and terms of sentence __JANURAY 7, 1983__

    (d)    Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)    Yes __X___    No _____

        Where?

        Name of Institution: __CORRECTIONAL TRAINING FACILITY__

        Address: __SOLEDAD, CA    93960-0689__

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

__P.C. § 187, MURDER, FIRST__

3. Did you have any of the following?

    Arraignment:                        Yes __X__    No _____

    Preliminary Hearing:            Yes __X__    No _____

    Motion to Suppress:            Yes _____    No __X__

4. How did you plead?

    Guilty _____    Not Guilty __X__    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury __X__    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?          Yes __X__    No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment          Yes __X__    No _____

    (b)    Preliminary hearing    Yes __X__    No _____

    (c)    Time of plea          Yes __X__    No _____

    (d)    Trial               Yes __X__    No _____

    (e)    Sentencing           Yes __X__    No _____

    (f)    Appeal            Yes __X__    No _____

    (g)    Other post-conviction proceeding    Yes _____    No _____

8. Did you appeal your conviction?    Yes __X__    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal          Yes __X__    No _____

        Year: _1984_        Result: Reversed "Special Circumstances"

        Supreme Court of California    Yes _____    No __X__

        Year: _____    Result: _____

        Any other court         Yes _____    No _____

        Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS       - 3 -

petition?                                          Yes _____    No X_____

(c)    Was there an opinion?                        Yes __X__    No_____

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                                   Yes _____    No_X____

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?          Yes _____    No X_____

[Note:  If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition.  You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding.  Attach extra paper if you need more space.

I.    Name of Court: __N/A_____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____Date of Result:_____

II.   Name of Court: __N/A_____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1         a._____

2         b._____

3         c._____

4         d._____

5         Result: _____ Date of Result:_____

6    III.   Name of Court: _____

7         Type of Proceeding: _____

8         Grounds raised (Be brief but specific):

9         a._____

10        b._____

11        c._____

12        d._____

13        Result: _____ Date of Result:_____

14   IV.   Name of Court: _____

15        Type of Proceeding: _____

16        Grounds raised (Be brief but specific):

17        a._____

18        b._____

19        c._____

20        d._____

21        Result: _____ Date of Result:_____

22  (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                     Yes _X___    No____

24    Name and location of court: Northern Disctrict Federal Court C 06-1429 RMW (PR)

25 **B. GROUNDS FOR RELIEF**

26    State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    - 5 -

need more space  Answer the same questions for each claim.

[Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent petitions may be dismissed without review on the merits. 28 U.S.C §§ 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: __Violation of Constitutional Due Process through denial of Liberty__ __Interest without supporting evidence.__

Supporting Facts __On February 28, 2006, Petitioner was denied parole by the Board__ __of Parole Hearings for the 5th time without any evidence showing that he is__ __currently an unreasonable risk of threat to public safety.__

_____

Claim Two: _____

_____

Supporting Facts: _____

_____

_____

_____

Claim Three: _____

_____

Supporting Facts: _____

_____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

__All grounds were presented to the California State Courts by Habeas Corpus Petition.__

_____

_____

_____

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    HAYWARD v. MARSHALL, (2008) 512 F.3d 536; ROSENKRANTZ v. MARSHALL,

5    (C.D.Cal. 2006) 444 F.3d 1063; SUPERINTENDENT v. HILL, (1985) 472 U.S. 445;

6    JANCSEK v. BD. OF PARDONS, 833 F.2d 1390; BIGGS v. TERHUNE (2003) 334 F.3d 644

7    Do you have an attorney for this petition?                    Yes____    No__X____

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on __5-11-2008__                    _D. Patterson_

14               Date                                    Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS            - 7 -

## DECLARATION OF SERVICE BY MAIL
### (by a person in state custody)
### (Fed.R.Civ.P.5; 28 U.S.C. § 1746)

RE:  **PATTERSON**         v.    **CURRY**         Case No.

      I, **DAVID PATTERSON**, C-59234, declare: I am a resident of the State of California, County of Monterey.

I am over the age of 18 years and I am a party to the within action.  My residence address is P.O. Box 689, Soledad,

California, 93960-0689.

      On May ⅃⅃ , 2008, I served the foregoing **PETITION FOR WRIT OF HABEAS CORPUS** on the parties

listed below by placing a true copy thereof, enclosed in a sealed envelope with first class postage fully prepaid, in the

United States mail at Soledad, California, addressed as follows:

      Original + One Copy

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
450 GOLDEN GATE AVENUE
BOX 36060
SAN FRANCISCO, CA    94102

      There is regular mail delivery by the U.S. Postal Service between the place of mailing and the places so

addressed.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed this ⅃⅃ day of May, 2008, at Soledad, California.

*D. Patterson*

DAVID PATTERSON
Petitioner in pro per

      PLEASE FILE ACCORDING TO THE "MAILBOX RULE" **HOUSTON v. LACK**, (1987) 108 S.Ct.

2379; **KOCK v. RICKETTS**, (9TH Cir. 1995) 68 F.3d 1191, ON THE DATE INDICATED ABOVE.

```
1   DAVID PATTERSON        C-59234
    P.O. BOX 689           GW-327L
2   SOLEDAD, CA            93960-0689
```

6                  IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
12  _____,  ) Case No.
        PETITIONER,             ) EVIDENTIARY HEARING REQUESTED
13                              )
                                ) PETITION FOR WRIT OF HABEAS CORPUS AND
14      -V-                     ) SUPPORTING MEMORANDUM OF POINTS AND
                                ) AUTHORITIES
15                              )
                                )
16  B. CURRY, WARDEN, et al,    )
        RESPONDENT.             )
17  _____   )
```

i

# TABLE OF CONTENTS

| | Page |
|---|---|
| COVER PAGE | i |
| TABLE OF CONTENTS | ii |
| TABLE OF AUTHORIES | iii-vi |
| MEMORANDUM OF POINTS AND AUTHORITIES | 2-32 |
| INTRODUCTION | 2-5 |
| A. PETITIONER HAS EXCEEDED HIS MINIMUM TERM | 2-3 |
| B. PETITIONER HAS NO POST CONVICTION BEHAVIOR WHICH WOULD INDICATE THAT HE IS CURRENTLY AN UNREASONABLE RISK TO PUBLIC SAFETY | 3-5 |
| DISCUSSION | 5-8 |
| STANDARD OF REVIEW | 5-6 |
| PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING | 6-8 |
| I. THE STATE COURT'S DECISION WAS CONTRARY TO AND AN UNREASONABLE APPLICATION OF FEDERAL LAW BECAUSE IT RELIED UPON AN UNREASONABLE DETERMINATION OF THE FACTS. | 8-30 |
| A. Standard of Review Under California Due Process. | 9-12 |
| B. Standard of Review Under Federal Due Process. | 12-30 |
| 1. STATE LAW REQUIRES MORE THAN THE FEDERAL CONSTITUTION DOES OF ITS OWN FORCE WITH RESPECT TO PAROLE DECISIONS IN CALIFORNIA. | 21-22 |
| 2. APPLICATION OF THE "OTHERWISE ARBITRARY" PORTION OF THE SOME EVIDENCE STANDARD, AND EXTENT OF THE LIBERTY INTEREST. | 22-30 |
| CONCLUSION | 30-31 |
| PROOF OF SERVICE | 32 |
| Exhibit A - Supreme Court Denial | |

**TABLE OF AUTHORITIES**

AUTHORITY                                                          Page

**CONSTITUTIONAL AUTHORITIES**

UNITED STATES CONSTITUTION AMENDMENTS 5 & 14        passim

**FEDERAL CASE LAW**

AGYEMAN v. CORRECTIONS CORP. OF AMERICA, (9th Cir. 2004)   31
    390 F.3d 1101

ARCHULETA v. HEDRICK (2004)                                 5
    365 F.3d 644

BAJA v. DUCHARME, (9th Cir. 1999)                          31
    187 F.3d 1075, cert. denied 528 U.S. 1079 (2000)

BIGGS v. TERHUNE (2003)                                 passim
    334 F.3d 644

BOARD OF PARDONS v. ALLEN (1987)                       passim
    482 U.S. 369

BRUCE v. TERHUNE (9th Cir. 2004)                           26
    376 F.3d 950

CASWELL v. CALDERON, (9th Cir. 2004)                    20,26
    363 F.3d 832, 839

COLEMAN v. BOARD OF PRISON TERMS (E.D.Cal. 2005)          25
    No. 96-0783 LKK PAN

COOPER-SMITH v. PALMATEER (9th Cir. 2005)                  5
    397 F.3d 1236

DUNN v. PAROLE COMN., (10th cir. 1978)                    20
    818 F.2D 742

EARP v. ORONSKI, (9th Cir. 2005)                          7,8
    43 F.3d 1158

GREENHOLTZ v. INMATES OF NEBRASKA PENAL AND CORRECTIONAL COMPLEX   passim
    442 U.S. 1 (1979)

IRONS v. WARDEN, (E.D.Cal. 2005)                       passim
    358 F.Supp.2d 936

IRONS v. CAREY, (9th Cir. 2005)                           25
    408 F.3d 1165, No. 05-15275

IRONS v. CAREY, (9th Cir.2007)                         passim
    479 F.3d 658

iii

1

## TABLE OF AUTHORITIES Continued

2  AUTHORITY                                              Page

3  ### FEDERAL CASE LAW Continued

4  IRONS v. CAREY, (9TH Cir. July 13, 2007)              4,25
       WL20273589
5

6  JANCSEK v. BD. OF PARDONS,                            20
       833 F.2d 1390

7  JOHNSON v. FINN (E.D.Cal. 2006)                       27,29
       2006 WL 195159 *8 n. 3
8

   JOINT ANTI-FASCIST REFUGEE COMM. v. McGRATH (1951)    25
9      341 U.S. 123

10 KEENEY v. TAMAYO-REYES (1992)                         7
       504 U.S. 1
11

   LANKFORD v. IDAHO (1991)                              25
12     500 U.S. 110

13 LUNA v. CAMBRA, (9th Cir. 2002)                       26
       306 F.3d 954, 960
14

   MARTIN v. MARSHALL (N.D.Cal. 2006)                    25
15     431 F.Supp.2d 1038

16 MASONER v. STATE, (C.D.Cal. 2004)                     29
       2004 WL 1080177 *1-2
17

   McQUILLION v. DUNCAN, (2002)                          passim
18     306 F.3d 895, 902

19 MORRISSEY v. BREWER, (1972)                           25
       408 U.S. 471
20

   ROSENKRANTZ v. MARSHALL (C.D.Cal. 2006)               5,25,26
21     444 F.Supp.2d 1063

22 SAIF 'ULLAH, (2005)                                   29
       2005 WL 1555389 at *13-16
23

   SANCHEZ v. KANE (C.D.Cal. 2006)                       25
24     444 F.Supp.2d 1049

25 SASS v. CALIFORNIA BOARD OF PRISON TERMS, (9th Cir. 2006)   14,15
   376 F.Supp.2d 975
26

   SASS v. CALIFORNIA BOARD OF PRISON TERMS, (9th Cir. 2006)   14-16
27 461 F.3d 1123

28

iv

**TABLE OF AUTHORITIES Continued**

AUTHORITY                                                    Page

**FEDERAL CASE LAW Continued**

SUPERINTENDENT v. HILL, (1985)                               passim
     472 U.S. 445

TAYLOR v. MADDOX (9th Cir. 2004)                            7,8,29
     366 F.3d 992, 1001

TOWNSEND v. SAIN (1963)                                      7
     372 U.S. 293

VLASAK v. SUPERIOR COURT OF CALIFORNIA ex rel.
COUNTY of LOS ANGELES, (9th Cir. 2003)                      26
     329 F.3d 683

WILLIAMS v. TAYLOR, (2000)                                   25
     529 U.S. 362

WILLIS v. KANE, (N.D.Cal. 2007)                             20
     485 F.Supp.2d 1126

**UNITED STATES CODE**

28 U.S.C. § 2254                                             5,17

**STATE CASE LAW**

In re BARKER, (Cal.App. 1 Dist. 2007)                       19
     59 Cal.Rptr.3d 746

In re DANNENBERG, (2005)                                     passim
     34 Cal.4th 1061

In re DUARTE (1983)                                          11
     143 Cal.App.3d 943, 193 Cal.Rptr.2d. 176

In re JEFFREY DAVID ELKINS (Oct. 31, 2006)                  4,20,25
     144 Cal.App.4th 475

In re LAWRENCE (Cal.App. 2 Dist. 2007)                      passim
     59 Cal.Rptr.3d 537

In re DONNELL JAMEISON (2007)                               25
     Superior Court of Santa Clara County, Case No. 71194

In re WEN LEE, (2006)                                       4,20,24
     143 Cal.App.4th 1400

In re ROSENKRANTZ, (2002)                                   passim
     29 Cal.4th 616

v

1

**TABLE OF AUTHORITIES Continued**

2 **AUTHORITY**                                                                    **Page**

3                          **State Case Law Continued**

4  In re ROSENKRANTZ,                                                             20
      80 Cal.App.4th 409
5
   In re ROSENKRANTZ, (2006)                                                    passim
6     LOS ANGELES SUPERIOR COURT Case No. BH003529

7  In re SCOTT I (2005)                                                           20
      119 Cal.App.4th 871
8
   In re SCOTT II (2005)                                                   4,19,23,28
9     133 Cal.App.4th 573, 34 Cal.Rptr.3d 905

10 In re SHAPUTIS, (2006)                                                         28
      135 Cal.App.4th, 37 Cal.Rptr.3d 324
11
   PEOPLE v. MURTISHAW (1981)                                                     23
12    29 Cal.2d 733

13 In re WEIDER (Cal.App. 6 Dist. 2007)                                          20
      52 Cal.Rptr.3d 147
14

15                              **State Statutes**

16
   Penal Code § 3041                                                           passim
17
                       **California Code of Regulations**
18
   § 2402                                                                        4,20
19

20

21

22

23

24

25

26

27

28

DAVID PATTERSON      C-59234
P.O. BOX 689         GW-327L
SOLEDAD, CA          93960-0689

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **DAVID PATTERSON**   , | ) Case No. |
| PETITIONER, | ) EVIDENTIARY HEARING REQUESTED |
|  | ) |
|  | ) **PETITION FOR WRIT OF HABEAS CORPUS AND** |
| -V- | ) **SUPPORTING MEMORANDUM OF POINTS AND** |
|  | ) **AUTHORITIES** |
|  | ) |
| **B. CURRY, WARDEN, et al**, | ) |
| RESPONDENT. | ) |
|  | ) |

COMES NOW PETITIONER IN PRO PER, DAVID PATTERSON, and submits this **PETITION FOR WRIT OF HABEAS CORPUS** and **MEMORANDUM OF POINTS AND AUTHORITIES**.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Petitioner, DAVID PATTERSON (hereinafter "Petitioner") comes before this honorable court seeking relief from a Constitutional Due Process violation he suffered at the hands of the Board of Parole Hearings (hereinafter "BPH" or "Board") when they denied him his liberty interest in parole at his 5th parole suitability hearing without any evidence supporting their allegation that he is **CURRENTLY** an **UNREASONABLE** risk of threat to public safety.

On February 28, 2006 the Board of Parole Hearings denied Petitioner parole for the 5th time. This denial was final on Jne 28 20006.  On January 2, 2007, Petitioner filed a timely Petition for Writ of Habeas Corpus with the Los Angeles County Superior Court, Case No. BH004408, which was denied on August 1, 2007. On November 21, 2007, Petitioner filed a timely Petition for Writ of Habeas Corpus with the Second District Appellate Court, Case No. B203812, which was denied on February 21, 2008. On March 3, 2008, Petitioner filed a timely Petition for Review, Case No. S161365, with the California Supreme Court which was denied on April 30, 2008 (Attached as Exhibit "A").  Petitioner has, therefore, exhausted his state remedies.

**A. PETITIONER HAS EXCEEDED HIS MINIMUM TERM**

Petitioner was sentenced to 25 years to life for first degree murder. At the time of his 5th parole suitability hearing he had been in State Prison for more than 23 years, this, after being in County Jail for approximately 2 years. In total, Petitioner had already been in custody for more than 25 years at the time of his 5th parole suitability hearing, earning him 100 months

2

1  of good time credit for a total of 33 years 4 months, a period

2  of 4 months longer than the maximum matrix term for the most

3  egregious first degree murder, on a crime committed 28 years ago

4  (26 at the time of his hearing).

5  The Second District Appellate Court, in defining terms for

6  prisoners sentenced to life held that:

> When the legislature sets an indeterminate maximum term
> with a fixed minimum term, the latter can be viewed as
> setting the period of imprisonment deemed necessary to
> satisfy the first two purposes, while the justification
> for continued imprisonment beyond that fixed minimum
> depends on the need for continued incapacitation of the
> offender. **In re Lawrence**, 150 Cal.App.4th 1511, 1542

> For purposes of parole, the "fixed minimum" is not
> necessarily the determinate term specified in the statute
> in effect at the time the court sentenced the defendant
> – for example, the seven years in the "seven years to
> life" sentence Lawrence received.  **That minimum can be
> decreased by credits for time served and good conduct in
> prison.** It also can be increased by application of the
> "matrix" which sets the minimum period before a prisoner
> is eligible for parole. This matrix takes account of
> factors demonstrating the crime the prisoner committed
> was more or less serious than the bare elements of the
> commitment offense. Thus, the de facto minimum sentence
> may be far longer (or sometimes shorter) than the
> statutory minimum embodied in the determinate element
> of the sentence – depending largely on the prisoner's
> relative culpability. This was true in Lawrence's case
> where, as explained earlier ... applying the matrix
> resulted in fixing her minimum release date not at seven
> years (or seven years minus time earned by good conduct
> credits) but at over 10 years because of her enhanced
> culpability given the circumstances of the crime she
> committed. (Id Emphasis added)

**B. PETITIONER HAS NO POST CONVICTION BEHAVIOR WHICH WOULD INDICATE**

**THAT HE IS CURRENTLY AN UNREASONABLE RISK TO PUBLIC SAFETY**

While incarcerated, Petitioner has not had any record

whatsoever of violent behavior or given any other indication

that he is not ready for parole.

Based on numerous recent rulings in State and Federal courts

holding that in order to support a finding of unsuitability

for parole "some evidence bearing and indicia of reliability" must exist that shows the prisoner is CURRENTLY an UNREASONABLE risk of threat to public safety, and NOT "some evidence" of an unsuitability factor, Petitioner submits that basing a denial of parole on the unchanging factors of his crime rather than his current risk of threat is a violation of due process. (See **Hayward v. Marshall** (2008) 512 F.3d 536; **Irons v. Carey**, No. 05-15275, 2007 WL2027359, at *3 (9th Cir. July 13, 2007); **In re Dannenberg**, No. H030031, 2007 WL3408290, at *9 (Cal.Ct.App. Nov. 16, 2007), modified, 2007 WL4227229 (Cal. [**DJDAR page 96**] Ct. App. Dec. 3, 2007); **In re Lee**, 143 Cal. App. 4th 1400, 1408 (Cal. Ct. App. 2006); **In re Scott**, 133 Cal. App. 4th 573, 595 (Cal. Ct. App. 2005); *see* Cal. Penal Code § 3041(b) (providing that the Board "shall set a release date unless... consideration of the public safety requires a more lengthy period of incarceration for this individual"). For our purposes, then, **"[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety."** **Lee**, 143 Cal. App. 4th at 1408 (citations and footnote omitted, Emphasis added); *see also* **In re Elkins**, 144 Cal. App. 4th 475,499 (Cal. Ct. App. 2006) (holding that the "governor, in reviewing a suitability determination, must remain focused... on facts indicating that release currently poses 'an unreasonable risk of danger to society' " (citing Cal. Code Regs. tit. 15, § 2402(a))); **Scott**, 133 Cal. App. 4th at 591 ("The

1  factor statutorily required to be considered, and the overarching

2  consideration, is 'public safety.'" (citing Cal. Penal Code §

3  3041 (b))). **Rosenkrantz v. Marshall.** 444 F.Supp.2d 1063,1080 n.

4  14 (C.D.Cal. 2006)

5      The foregoing state appellate court cases are meaningful to

6  this petition based upon the holding in **RYMAN v. SEARS, ROEBUCK**

7  **AND CO.,** (9th Cir. 2007) 505 F.3d 993, 994.

8          "[1] today we reiterate the rule that when (1) a
           federal court is required to apply state law, and (2)
9          there is no relevant precedent from the state's highest
           court, but (3) there **is** [italics in original] relevant
10         precedent from the state's intermediate appellate court,
           the federal court must follow the state intermediate
11         appellate court decision unless the federal court finds
           convincing evidence that the state's supreme court likely
12         would not follow it.'"

13
       In that Petitioner is a pro per litigant with absolutely
14
   no training in the law whatsoever, limited access to the Law
15
   Library for research and preparation of his litigation, and has
16
   no assistance or help except from other non-trained prisoners, he
17
   therefore prays this Court will "liberally construe" his habeas
18
   petition. (**ARCHULETA v. HEDRICK**, (2004) 365 F.3d 644).
19
                              DISCUSSION
20
                          STANDARD OF REVIEW
21
       Under the AEDPA a federal court may not grant habeas relief
22
   unless the state court decision challenged is contrary to, or
23
   involves an unreasonable application of, clearly established
24
   Federal law, as determined by the Supreme Court of the United
25
   States **28 U.S.C. § 2254(d)(1)**. AEDPA limits the source of clearly
26
   established federal law to Supreme Court precedent, including the
27
   legal principles that flow from that precedent. **Cooper-Smith v.**
28

                                  5

1  **Palmateer**, 397 F.3d 1236, 1242 (9th Cir. 2005)

2  **Greenholtz v. Inmates of Nebraska Penal and Correctional**

3  **Complex**, 442 U.S. 1 (1979) established that all that is required

4  by the Due Process Clause of the United States Constitution of

5  its own force is that an inmate be afforded an opportunity to

6  be heard and when parole is denied that the inmate be informed

7  in what respects he falls short of qualifying for parole. (Id at

8  16) However, **Greenholtz** also established that the language and

9  structure of state statutes may create liberty Interests which

10  are entitled to greater federal protection than afforded by the

11  Due Process Clause of its own force. (Id at 12; see also, **Board**

12  **of Pardons v. Allen**, 482 U.S. 369, 377-378 (1987).)

13  The Ninth Circuit has determined that under the 'clearly

14  established' framework of **Greenholtz** and **Allen**, California's

15  parole scheme gives rise to a cognizable liberty interest in

16  release on parole. (**McQuillion v. Duncan**, 306 F.3d 895, 902

17  (2002)). Further,   "this liberty interest is created, not upon

18  the grant of a parole date, but upon the incarceration of the

19  inmate." (**Biggs v. Terhune**, 334 F.3d 910, 915 (9th Cir. 2003).

20  Six years after **Greenholtz**, **Superintendent v. Hill**, 472 U.S. 445

21  23 (1985), established the "some evidence" rule. The controlling

22  United States Supreme Court law in this parole context is now

23  "clearly established" Supreme Court precedent. A parole board's

24  decision, like a prison disciplinary board's decision, deprives a

25  prisoner of due process if it is not supported by "some evidence"

26  or is otherwise arbitrary. (Id at 28 p. 457)

27       **PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING**

28  The most important standard of review to be considered at this

6

juncture in the litigation - the standard this court must apply in deciding whether or not to grant Petitioner an evidentiary hearing on one or more of the habeas corpus claims is:

> A petitioner on federal habeas corpus is entitled to an evidentiary hearing where the Petitioner has established a "colorable claim" for relief, and where the Petitioner has never been accorded a state or federal hearing on his claim. (**Earp v. Oronski**, 43 F.3d 1158) 1167 (9th Cir. 2005), citing **Townsend v. Sain** 372 U.S. 293 (1963) and **Keeney v. Tamayo-Reyes** 504 U.S. 1, 5 (1992).
>
> In stating a "colorable claim", a Petitioner is merely required to allege specific facts, which, if true, would entitle him to relief. Ibid.

Granted, under the AEDPA, a federal court is not required to order a hearing where the petitioner failed to develop the facts in state court. In such cases, the federal court accords a presumption of correctness to the facts found by the state court, and need not hold any evidentiary hearing unless those facts are rebutted by clear and convincing evidence. On the other hand, no AEDPA deference is due where the state has made an "unreasonable determination of the facts" and:

> Where a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence such findings clearly result in an 'unreasonable determination' of facts. **Taylor v. Maddox**, 366 F.3d 992, 1001 (9th Cir. 2004)

In sum, an evidentiary hearing is required under the AEDPA and an appellate court will remand for a hearing if the district court rules without granting one:

> ...where the petitioner has established a "colorable claim" for relief, and where the petitioner has never been accorded a state or federal hearing on his clam. **Earp**, supra, at 1167.

Here, Petitioner requested an evidentiary hearing at every

7

1  level of the state habeas proceedings, and each of the courts
2  to which he applied ruled without granting him an evidentiary
3  hearing. As a result, (1) Petitioner is entitled to an
4  evidentiary hearing in this court before the court can make any
5  credibility determinations on the facts alleged in the petition
6  and supporting exhibits; and (2) Any controverted "facts" found
7  by the state court while denying a request for an evidentiary
8  hearing necessarily result from an "unreasonable determination"
9  of the facts, and hence are not entitled to any presumption of
10 correctness. **Earp**, supra, at 1167; Taylor, supra, at 1101:

> Where the state court's legal error infects the fact
> finding process, the resulting factual determination will
> be unreasonable and no presumption of correctness can
> attach to it.

**I. THE STATE COURT'S DECISION WAS CONTRARY TO AND AN
UNREASONABLE APPLICATION OF FEDERAL LAW BECAUSE IT RELIED
UPON AN UNREASONABLE DETERMINATION OF THE FACTS.**

The following except is taken from the Second District Appellate
Court Decision **In re Lawrence**, 59 Cal.Rptr.3d 537 (Cal.App. 2
Dist. 2007).

> The California Supreme Court has formulated a standard
> of review in parole denial cases, a "some evidence"
> test, based on the due process requirements of the
> California Constitution. Meantime, the Ninth Circuit
> has constructed a standard of review in such cases based
> on the due process clause of the U.S. Constitution.
> This federal standard applied by district courts in the
> Ninth Circuit also uses the "some evidence" language –
> requiring affirmance of the decision denying parole if
> that decision is supported by "some evidence." Thus, it
> is not absolutely clear there indeed are two different
> standards of review – a California state standard and
> a federal standard. But it is clear the Ninth Circuit
> has added content to the federal test not yet found in
> the California Supreme Court's elaboration of its "some
> evidence" standard. Accordingly, we will discuss both
> and apply each to the Governor's reversal of the Board's
> recommendation **Lawrence** be released on parole.

8

**A. Standard of Review Under California Due Process.**

In a pair of recent opinions the California Supreme Court has outlined the courts' scope of review under the California Constitution when a Governor overturns a Board's grant of parole to a prisoner serving an indeterminate sentence. Rejecting the Governor's position the courts had no role in reviewing nor power to reverse a Governor's veto of a Board's positive recommendation, **In re Rosenkrantz** the Supreme Court held, "[t]o the extent the Governor asserts that the court is not authorized to determine whether the Board's parole decision has a factual basis and thus satisfied the requirements of due process of law, we disagree ... ." (**In re Rosenkrantz** (2002) 29 Cal.4th 616, 617, 128 Cal.Rptr.2d 104, 59 P.3d 174 .) [C]onstitutional and statutory provisions ... set forth standards and criteria that limit the Governor's review of a parole decision ... *and give rise to a protected liberty interest under the California due process clause.*" (**In re Rosenkrantz**, supra, 29 Cal.4th at page 660 , 128 Cal.Rptr.2d 104, 59 P.3d 174 italics added.) "Under California law" this liberty interest underlying a Governor's parole review decisions is protected by due process of law." (**In re Rosenkrantz**, supra, 29 Cal.4th at page, 661, 128 Cal.Rptr.2d 104, 59 P.3d 174.) But this same decision while granting prisoners judicial review when either a Board or Governor denies them parole, also took away much of the courts' ordinary power when reviewing those determinations. First, the Supreme Court addressed judicial review of a Board's decision. "[W]e conclude that the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether *some evidence* in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation." (**In re Rosenkrantz**, supra, 29 Cal.4th at page 658, 128 Cal.Rptr.2d 104, 59 P.3d 174, italics added.) Then the Court held, "the courts properly can review a Governor's decisions whether to affirm, modify, or reverse parole decisions by the Board to determine whether they comply with due process of law, and that such review properly can include a determination of whether the factual basis of such a decision is supported by *some evidence* in the record that was before the Board." (**In re Rosenkrantz**, supra, 29 Cal.4th at 667, 128 Cal.Rptr.2d 104, 59 P.3d 174, italics added.) Other than reiterating the "some evidence" standard of review, the Supreme Court's second opinion bearing on the parole approval process for life prisoners, the hotly-contested 4-3 decision of **In re Dannenberg**, (2005) 34 Cal.4th 1061, Cal.Rptr.3d 417, 104 P.3d 783, has scant relevance to **Lawrence**'s

9

petition. In essence, it merely held Penal Code section **3041** subdivision (a).

Section **3041** subdivision (a) reads in relevant part:

"One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section **3041.5**. No more than one member of the panel shall be a deputy commissioner. In the event of a tie vote, the matter shall be referred for an en banc hearing by the Board. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime."

[I]n stating the Board *shall normally* set a parole release date" (italics added), when a prisoner approaches her minimum parole eligibility release date did not mean generally or usually or in most cases. Instead the Board can and should first consider under section **3041**, subdivision (b) "whether a prisoner's commitment crime and/or other past crimes require further delay in setting a release date because of public safety concerns." (**In re Dannenberg**, supra, 34 Cal.4th at pages 1087-1088, 23 Cal.Rptr.3d 417, 104 P.3d 783.)

Section **3041** subdivision (b) reads in pertinent part:

"The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."

In **Lawrence**'s case, the Board already has fixed a release date, in fact four of them over the past 13 years. The only issue before this court is whether the Governor validly revoked the most recent of those parole releases voted by the Board.

The California Supreme Court has provided less guidance about the content of the "some evidence" test. It has, however, suggested the "some evidence" must tend to

prove the existence of some factor which is relevant to the ultimate finding the statute requires before parole can be denied – release of the prisoner on parole would create an unreasonable risk to public safety. Citing to section 3041, subdivision (b), in **Rosenkrantz** our highest court held 'the governing statute provides that the Board *must* grant parole *unless* it determines that *public safety requires* a lengthier period of incarceration for the individual *because of the gravity of the offense* underlying the conviction." (**In re Rosenkrantz**, supra, 29 Cal.4th at page 654, 128 Cal.Rptr.3d 104, 59 P.3d 74, italics added.) And in **Dannenberg**, it held, "the Board may decline to [set fixed release dates] in an individual case if it concludes, *on relevant grounds* with support in the evidence, that the grant of parole date is premature *for reasons of public safety*" (**In re Dannenberg**, supra, 34 Cal.4th, at page 1071 , 23 Cal.Rptr.3d 417,104 P.3d 783, italics added.) Later in the **Dannenberg** opinion, the court further explained, "if the circumstances of a particular murder persuade the Board that the prisoner who committed it is *presently too dangerous* to grant a fixed parole release date, the *Board may deny parole* without deciding when the inmate will be released..." (**In re Dannenberg**, supra, 34 Cal.4th at page 1080, 23 Cal.Rptr.3d 417, 104 P.3d 783, italics added.) " '[T]he Legislature left a "consideration of the *public safety*" as the fundamental criterion in assessing suitability.'" (**In re Dannenberg**, supra, 34 Cal.4th at page 1080, 23 Cal.Rptr.3d 417, 104 P.3d 783, quoting **In re Duarte** (1983) 143 Cal.App.3d 943, 948, 193 Cal.Rptr.2d. 176, italics added.)

When evaluating whether a commitment offense alone can support such a finding, the Supreme Court has supplied some further guidance, focused largely on the nature of that offense. In **Rosenkrantz**, it explained, "a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation – for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.... Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be *particularly egregious* to justify the denial of a parole date.' [Citation.]." (**In re Rosenkrantz**, supra, 29 Cal.4th at page 683, 128 Cal.Rptr.2d 104, 59 P.3d 174, italics added.) In **Dannenberg's** vigorously contested 4–3 decision, the four justice majority took the position the **Rosenkrantz** formulation, "including our use of the phrase 'particularly egregious,' conveyed only that the violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined." (**In re Dannenberg**, supra, 34 Cal.4th at page 1095, 23 Cal.Rptr.3d 417, 104

11

P.3d 783, italics omitted.)

[1] Putting together the elements of the California "some evidence" due process test, the appellate court can uphold the Board or Governor's denial of parole if there is some evidence the prisoner's commitment offense was "more violent and vicious than minimally necessary to convict of that offense" such that it provides "relevant evidence" that "public safety *requires* lengthier period of incarceration."

### B. Standard of Review Under Federal Due Process.

As noted above, the California Supreme Court expressly based the "some evidence" standard of review exclusively on the due process requirements of the California constitution. Indeed the Court observed, "[b]ecause we conclude as a matter of California law that the 'some evidence' standard of review is applicable to judicial review of a Board's decision denying parole, we have no occasion to determine whether the same standard is also mandated under federal constitutional principles." (**In re Rosenkrantz**, supra, 29 Cal.4th at page 658, footnote 12, 128 Cal.Rptr.2d 104, 59 P.3d 174.) Consequently, there is no California Supreme Court interpretation of the federal due process standard to bind this court when it evaluates a Board or Governor's denial of parole. As a result, we appropriately turn to the federal courts for their construction of the requirements imposed by federal due process when courts review parole decisions.

Both before and after the California Supreme Court's decision in **Rosenkrantz**, the federal courts in fact have found California's parole determination process also is subject to the U.S. Constitution's due process mandates. While those courts likewise have articulated a "some evidence" standard of review under the federal Constitution, they have provided more and in an important sense different guidance as to the meaning of that concept than is found in the only two California Supreme Court cases to discuss the issue thus far. As it turns out, some of that guidance has special relevance to this court's review of the Governor's reversal of **Lawrence**'s parole in this case.

Two United States Supreme Court decisions, **Greenholtz v. Inmates of Nebraska Penal and Correctional Complex**, (1979) 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668, decided in 1979 and **Board of Pardons v. Allen**, (1987) 482 U.S. 369, 381, 107 S.Ct. 2415, 96 L.Ed.2d 303 decided in 1987, held the federal due process clause creates a constitutional liberty interest for convicted persons in certain jurisdictions. The existence of this right depends on whether the state employs "mandatory

language" indicating parole will be granted if certain findings are made. (**Board of Pardons v. Allen**, supra, 482 U.S. at pages 377-381, 107 S.Ct. 2415.) In 2002, the Ninth Circuit examined the California parole scheme in **McQuillion v. Duncan** (9th Cir.2002) 306 F.3d 895, and found it "uses mandatory language and is largely parallel to the schemes found in **Greenholtz** and **Allen**." (**McQuillion v. Duncan**, supra, 306 F.3d at page 901.) Accordingly, the **McQuillion** court found a "liberty interest" was created under the federal Constitution for state prisoners in California. (**McQuillion v. Duncan**, supra, 306 F.3d at page 901.)

In 2003, a year after **McQuillion**, the Ninth Circuit poured some content into this federal constitutional right in the case of **Biggs v. Terhune**, (9th Cir.2003) 334 F.3d 910. First, the court held the "liberty interest" protected under the federal Constitution "is created, not upon the grant of a parole date, but upon the incarceration of the inmate." (**Biggs v. Terhune**, supra, 334 F.3d at page 915.) Thus, the liberty interest exists at the time the parole board or Governor determines whether the prisoner is too dangerous to consider setting a parole date. The **Biggs** court then explained, "In the parole context, the requirements of due process are satisfied if 'some evidence' supports the decision." (**Biggs v. Terhune**, supra, 334 F.3d at page 915.) But then the court went on to elaborate on the "some evidence" standard as it applies to parole denials based principally on the nature of the prisoner's commitment offense.

"To insure that a state-created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by state statute to be considered, but also the concepts embodied in the Constitution requiring due process of law." [Citation.]

"The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. [Citation.] As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole."

"We must be ever cognizant that '[d]ue [p]rocess is not a mechanical instrument. It is not a yardstick. It

13

is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.' [Citation.] A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (**Biggs v. Terhune**, supra, 334 F.3d at pages 916-917, italics added.)

Although the **Biggs** court affirmed the Board's denial of parole at what was this prisoner's first parole hearing, conducted in 1999 for his 1985 murder conviction, this conviction arose out of the execution-style assassination of a witness scheduled to testify against an illegal enterprise where **Biggs** was employed. (**Biggs v. Terhune**, supra, 334 F.3d at page 912.) This was a comparatively early parole hearing (only 14 years after the prisoner's conviction) involving a type of murder demonstrating cold calculation, arising out of the prisoner's participation in ongoing criminal activity pursued with an economic motive, and striking at the heart of the justice system. Nonetheless, the court issued the above warning suggesting even a murder of this nature although supplying "some evidence" of a continuing threat to "public safety" justifying a denial of parole at this first hearing, might not be enough evidence of that threat in subsequent parole proceedings.

Several federal district courts in decisions to be discussed later in this opinion have considered parole denials at later stages of prisoners' incarceration and applied the standard of review announced in **Biggs**. In doing so, those courts frequently have found the nature of the commitment offense alone, essentially no matter how bad the circumstances of that offense, to be less than "some evidence" justifying a denial of parole to the prisoner involved, at least after 15 or more years of incarceration." See cases discussed below.

Two subsequent Ninth Circuit opinions have reaffirmed the **Biggs** rationale, although both refused to order release of the petitioner and also suggested a limitation on federal courts when applying the **Biggs** standard when reviewing state court denials of relief.

The first of these, **Sass v. California Board of Prison Terms**, (9th Cir.2006) 461 F.3d 123), was decided in August, 2006 considering an appeal from a district court decision (**Sass v. California Board of Prison Terms**, (2005) 376 F.Supp.2d 975), denying relief to a prisoner. The district court's denial was based principally on that court's finding the California Supreme Court's **Dannenberg** opinion meant California's parole scheme

14

no longer created a due process liberty interest in release on parole. (**Sass v. California Board of Prison Terms**, supra, 376 F.Supp.2d at pages 981-983.) The Ninth Circuit quickly reversed this part of the district court's rationale.

"The district court misread **Dannenberg**. **Dannenberg** addressed the narrow question whether the Board must engage in a comparative proportionality analysis in setting parole dates pursuant to section **3041**(a) before determining whether an inmate is suitable for parole pursuant to section **3041(b)**. [Citation.]... [¶] The California court did not hold that section **3041(b)** does not use mandatory language.... Instead, the court proceeded to the second step of the due process analysis - whether the procedures attendant upon a deprivation were constitutionally sufficient.... The court would not reach this step if it had held that there was no liberty interest. [Citation.] **Dannenberg** does not explicitly or implicitly hold that there is no constitutionally protected liberty interest in parole." (**Sass v. California Board of Prison Terms**, supra. 461 F.3d at pages 1127-1128.)

The Ninth Circuit then turned to the second issue, whether "some evidence" supported the Board's denial of parole at hearings in 1999 and 2000 - and the California courts' refusals to grant relief from those denials. **Sass** had been convicted of second degree murder, gross vehicular manslaughter, hit and run death, causing injury while driving under the influence, and felony drunk driving in 1988. (**Sass v. California Board of Prison Terms**, supra, 461 F.3d at page 1125.) So the denials under consideration by the Ninth Circuit occurred 11 and 12 years after the prisoner's conviction. On this issue of existence of "some evidence" justifying denial of parole, one of the three judges dissented, but the majority upheld the Board decisions and the California courts' refusal to intervene. (**Sass v. California Board of Prison Terms**, supra, 461 F.3d at page 1129.)

Unfortunately for proper analysis of the court's rationale on this second issue, the majority opinion is only brief and conclusionary, while the dissent is lengthy and detailed. Based primarily on revelations in the dissent, the apparent reason the majority found "some evidence" supported the Board's denial of parole was Sass's extensive drunk driving record before the fatal crash. He had seven prior DUI convictions (and who knows how many undetected drunk driving incidents) over several years." (**Sass v. California Board of Prison Terms**, supra , 461 F.3d at page 1130, footnote 1 (dis. opn. of Reinhardt. J.). Where the dissenting judge and the majority apparently differed was over the likelihood the prisoner would return to drinking

once released and thus represent a continuing danger to public safety. The dissent placed great weight on Sass's efforts to cure his addiction to alcoholism and also emphasized nothing in the future will reduce the risk of relapse. (**Sass v. California Board of Prison Terms**, supra, 461 F.3d at page 1138.) Thus, the inevitable consequence of the majority's view would be a lifetime in prison for **Sass** (**Sass v. California Board of Prison Terms**, supra, 461 F.3d at page 1132), the very result the **Biggs** court found would violate the prisoner's due process rights to parole.

The two judges in the majority tipped their hats to **Biggs v. Terhune** and did not purport to differ with its rationale. (**Sass v. California Board of Prison Terms**, supra, 461 F.3d at page 1129.) Yet, consistent with the conclusionary nature of their opinion the majority failed to distinguish **Biggs** or explain whether and when in the future the commitment offense and Sass's pre-commitment drunk driving would lose their predictive capacity and thus no longer provide "some evidence" in support of the denial of parole.

The even more recent Ninth Circuit opinion, **Irons v. Carey**, (9th Cir.2007) 479 F.3d 658, was authored by the dissenting judge in **Sass**, yet also denied relief for the prisoner challenging the Board's denial of parole. The court reversed the district court decision which had found a lack of "some evidence" the prisoner's release would represent a present danger to the community. (In **Irons v. Warden of California State Prison - Solano**, (E.D.Cal.2005) 358 F.Supp.2d 936, 939 a district court judge in the Eastern District (J. Karlton) found a 17-year-old commitment offense insufficient as "some evidence" of the prisoner's continued dangerousness, even though it was coupled with some other pre-conviction criminality. Similar to Lawrence, Irons had both shot and stabbed the victim. (Id at pages 940-941.) In March 1984, the prisoner and the victim were renting rooms in the same house and the landlords told Irons the victim had stolen some items from them. Irons went to the victim's room and an argument then ensued, with the victim denying the alleged thefts. Irons left and retrieved a rifle from his room. He fired 12 rounds into the victim then told him he was going to let him bleed to death. Then he pulled out a knife and stabbed the victim twice in the back, rolled him up into a sleeping bag and locked the room. Ten days later he weighted the sleeping bag, drove the body to a deserted coastal area and threw it into the surf. In 2001, some 17 years after Irons's crime and conviction, the Board denied him a release date, a decision that after being upheld in the California state courts came before the federal courts on a habeas corpus petition. The Board's denial was based on a finding Irons committed the murder in a calculated

manner, demonstrated a callous disregard for human life, and for a trivial motive. Furthermore, at the time of the crime Irons was a drug user. (Id at page 944.) The district court found these factors failed to supply "some evidence" of present dangerousness under the standard of review declared in **Biggs**, but made a somewhat different point of than the judge in **Rosenkrantz**.

"[I]mportant ... in assessing any due process violation is the fact that the continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole. The court asks rhetorically - what is it about the circumstances of petitioner's crime or motivation which are going to change? The answer is nothing. The circumstances of the crime will always be what they were, and petitioner's motive for committing them will always be trivial.... Given that no one seriously contends lack of seriousness or lack of triviality at the present time, the potential for in this case is remote to the point of non-existence. Petitioner's liberty interest should not be determined by such an arbitrary, remote possibility."

"In the instant case, the [Board] has apparently relied on these unchanging factors at least four prior times in finding petitioner unsuitable for parole. Petitioner has 'continue[d] to "demonstrate exemplary behavior and evidence of rehabilitation."' [Citation.] Under these circumstances, the continued reliance on these factors at the 2001 hearing violated due process." (Id at page 947, footnote omitted).

But this Ninth Circuit opinion, unlike **Sass**, expressly embraced **Biggs** rationale and indeed emphasized its denial of relief was only for the time being - indeed predicated on the fact the prisoner had not yet served the minimum time required for the offense he committed. (**Irons v. Carey**, supra, 479 F.3d at pages 664-665.)

The **Irons** court noted the narrow scope of review allowed federal courts in applying federal due process standards to a denial of parole. "Because **Irons** filed his petition after the AEDPA [Antiterrorism and Effective Death Penalty Act of 1996], his petition for habeas corpus may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1)." Thus when it came down to determining whether the denial of parole to Irons violated federal due process, the Ninth Circuit felt compelled to invoke the general "some evidence" standard announced by the Supreme Court in **Superintendent v. Hill**, (1985) 472 U.S. 445, 454, 105 S.Ct. 2768, 86

L.Ed.2d 356), and ask only whether the state court "unreasonably applied" that standard. (**Irons v. Carey**, supra, 479 F.3d at page 664.)

The Ninth Circuit panel then responded to **Irons** argument invoking **Biggs v. Terhune**, for the proposition the Board could no longer rely on the "immutable factor" of his commitment offense to find him unsuitable for parole. Turning to **Sass**, the **Irons** court pointed out, "[a]lthough we acknowledged [in **Sass**] that **Biggs** represents the law of this circuit... we nonetheless held that the Board's reliance on the 'gravity' of the... murder..., in combination with prior incidents of unlawful conduct, provided a sufficient basis for the Board to deem **Sass** unsuitable for parole. Because the murder **Sass** committed was less callous and cruel than the one committed by **Irons**,... our decision in **Sass** precludes us from accepting Iron's [sic] due process argument...." **Irons v. Carey**, supra, 479 F.3d at pages 664-665.)

But after apparently "taking away" from the **Biggs** interpretation of the federal "some evidence" test, the **Irons** court "gaveth back" – adding further content to that standard of review, suggesting for how long in an inmate's imprisonment a Board or Governor's sole reliance on the commitment offense (and pre-commitment behavior) may still satisfy due process. "We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in **Biggs**, **Sass**, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. [Citations.] All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoner were deemed unsuitable for parole prior to the expiration of their minimum terms." **Irons v. Carey**, supra, 479 F.3d at pages 665 italics added.)

Importantly, in the instant case, Petitioner has exceeded his minimum term of 25 years by some 8 years, 4 months.

[2] As noted earlier, the Ninth Circuit decision in **Irons** was heavily influenced by constraints imposed upon federal courts by the AEDPA, denying them the power to reverse state decisions upholding a board or gubernatorial denial of parole unless they can legitimately find the state court's decision was contrary to, or an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States.'" (**Irons v. Carey**, supra, 479 F.3d at pages 662.) The AEDPA does not apply to state courts however. Thus state courts are free to apply what they discern to be the proper interpretation of federal due process standards in evaluating a governor's reversal of a parole board's recommendation a defendant be released on parole whether the source of the federal standard derives directly from Supreme Court authority or a federal circuit court interpretation of that authority. Moreover, a state court is free to do so even if a federal could not because of the AEDPA and also even if the federal standard subjects the governor's decision to a somewhat closer and slightly different brand of scrutiny than called for by the state due process standard. To put it another way, as a state court we can apply the Ninth Circuit's **Biggs v. Terhune**, standard to reverse a board or gubernatorial denial of parole where it is reasonable to do so, while federal courts can only reverse that executive branch decision where it would be unreasonable not to.

[3] Combining the California and federal standards of review, as they have been articulated thus far by the California Supreme Court and the Ninth Circuit, respectively, the commitment crime can lack the power to supply "some evidence" supporting a denial of parole because of the interplay between two factors - the nature of that crime and the passage of time since its commission. That is, the fact there is "some evidence" the crime was committed a certain way at a certain time does not mean that crime necessarily represents "some evidence" the prisoner's release will pose an unreasonable risk of danger to the public safety at the present tie. Whether it possesses the necessary predictive value depends both on the nature of the crime and how long ago it happened.

The following except is taken from the First District Appellate Court Decision **In re Barker**, 59 Cal.Rptr.3d 746 (Cal.App. 1 Dist. 2007).

The over arching consideration in determining whether to grant parole is public safety. (**In re Scott II** (2005) 133 Cal.App.4th 573, 591, 34 Cal.Rptr.3d 905 (**Scott II**). That is, under the applicable "Penal Code section **3041**, the [Board] 'shall set a release date unless it determines that the gravity of the current convicted... offense... is such that consideration of the public safety requires a more lengthy period of incarceration for this individual...'

Review of a decision to deny parole by the Parole Board

is under the deferential "some evidence standard. (**In re Rosenkrantz**, (2002) 29 Cal.4th 616, 658, **In re Elkins**, 144 Cal.App.4th 475, 488 ["Court review of the ... is governed by a deferential 'some evidence' standard designed to ensure minimum procedural due process protection"].)

Prisoners possess a protected liberty interest in connection with parole decisions rendered by the Board of Parole Hearings, and imposition of a standard of review less stringent than the "some evidence" test would permit the Board to render a decision without any basis in fact, which would be arbitrary and capricious (**Rosenkrantz**, supra, (2002) 29 Cal.4th at p. 677), thereby depriving the prisoner of due process of law. **U.S.C.A. Const.Amend. 14**

Only a modicum of evidence is required to satisfy the "some evidence" standard necessary to support a decision to deny parole (**Rosenkrantz**, supra, (2002) 29 Cal.4th at p. 677); However, that evidence must have some indicia of reliability (**In re Scott** (2005) 119 Cal.App.4th 871, 899, and suitability determinations must have some rational basis in fact. (**Elkins**, supra 144 Cal.App.4th at 489).

The test in reviewing a decision by the Board to deny parole is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety; some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety. (**In re Lee**, (2006) 143 Cal.App.4th 1400, 1408).

In the instant case, the Board's reliance on the circumstances of the commitment offense to deny parole violates Petitioner's due process rights as circumstances were no more aggravated or violent than the minimum necessary to sustain his conviction. (**U.S.C.A. Const.Amend. 14**; **In re Rosenkrantz**, (2002) 29 Cal.4th 616; West's Ann.Cal.**Penal Code § 3041**; **15 CCR § 2402**). See also: **In re Weider**, 52 Cal.Rptr.3d 147 (Cal.App. 6 Dist. 2007), **In re Rosenkrantz**, 80 Cal.App.4th 409, **Irons v. Carey**, (9th Cir. 2007) 479 F.3d 658, **Willis v. Kane**, 485 F.Supp.2d 1126 (N.D. Cal. 2007), **Biggs v. Terhune** (2003) 334 F.3d 910, **McQuillion v. Duncan,** (2001) 306 F.3d 901, 904; **Jancsek v. Bd. of Pardons**, 833 F.2d 1390 (adopting the "some evidence" standard set forth by the Supreme Court in **Superintendent v. Hill**, (1985) 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356, see also **Caswell v. Calderon**, 363 F.3d 832, 839 (9th Cir. 2004). **Greenholtz v. Nebraska Penal Inmates**, (1979) 442 U.S. 1, **Dunn v. Parole Comn.**, (10th Cir. 1978) 818 F.2d

1    742, **Penal Code § 3041**(a).

**1. STATE LAW REQUIRES MORE THAN THE FEDERAL CONSTITUTION DOES OF ITS OWN FORCE WITH RESPECT TO PAROLE DECISIONS IN CALIFORNIA.**

When is a determination by the Board finding a prisoner unsuitable, and a state court's decision upholding that determination, an unreasonable application of clearly established federal law?

A decision by the Board denying parole may be "otherwise arbitrary" even if supported by some evidence. Although federal law establishes the "some evidence" standard, case law applying the highest court's decisions informs us of what that evidence may consist and to what it must pertain. If a state court decides the board's decision denying parole is supported by "some evidence" but disregards evidence that The decision was "otherwise arbitrary" as informed by case law, Such application constitutes an unreasonable application under **Greenholtz**, **Allen**, and **Hill**, the state court decision must be reversed under the AEDPA and the petition granted.

**In re Dannenberg**, (2005) 34 Cal.4th 1061, is often cited in support of the proposition that under that decision California prisoners have no liberty interest and that the commission of the offense alone is sufficient to deny parole for as long as the board wishes. However, **Dannenberg**'s holding only addressed the narrow question whether the Board must engage in a comparative proportionality analysis in setting parole dates pursuant to **Penal Code § 3041**, subd. (a), and held that "[n]othing in the statute states or suggests that the Board must evaluate the case under standards of uniformity before exercising its authority to deny a parole date on the grounds the particular offender's

1  criminality presents a <u>continuing</u> public danger." (Id at 1070)

2  (Underlining emphasis added.)

3  **Dannenberg** also explained that California prisoners do have

4  "a liberty interest and expectation to the extent that state law

5  provides it." (Id at 1098 n. 18) The extent to which prisoners in

6  California have a liberty interest has previously been discussed

7  by the California Supreme Court in **In re Rosenkrantz**, (2002) 29

8  Cal.4th 616, setting forth principles at p. 683. **Rosenkrantz** was

9  not overruled. (**Dannenberg**, 34 Cal.4th at 1094 ["our conclusion

10  does not contravene **Rosenkrantz**," 29 Cal.4th 616.] Post **Dannenberg**

11  state courts continue to follow **Rosenkrantz**.

12  One principle was explained by Justice Moreno in **Rosenkrantz**

13  explaining in his separate concurring opinion:

14      [t]here will come a point, which already may have arrived,
        when petitioner would have become eligible for parole
15      if he had been convicted of first-degree murder. Once
        petitioner reaches that point, it is appropriate to
16      consider whether his offense would still be considered
        especially egregious for a <u>first-degree</u> murder in order
17      to promote the parole statute's goal of proportionality
        between the length of sentence and the seriousness of
18      the offense. (Id at 690.)

19  Justice Moreno explained that it would be appropriate at that

20  point, for judicial reappraisal of the Board's decision.

21  **2. APPLICATION OF THE "OTHERWISE ARBITRARY" PORTION OF THE SOME**
    **EVIDENCE STANDARD, AND EXTENT OF THE LIBERTY INTEREST.**
22

23  On June 26, 2006, the Los Angeles Superior Court reappraised

24  and reversed the Board's decision denying Robert **Rosenkrantz**

25  parole. (**In re Rosenkrantz**, Los Angeles Superior Court Case No.

26  BH003529;) The Court of Appeal subsequently refused to stay the

27  decision, July 31, 2006, and on August 3, 2006, the California

28  Supreme Court summarily denied the state's petition for review.

1  Significantly, the Superior Court cited **Biggs** and **Irons v. Warden**,

2  (E.D.Cal. 2005) 358 F.Supp.2d 936, as stating the applicable

3  legal principles and standard first stated by Justice Moreno.

4      Thus, the oft-cited idea that the commitment offense and past

5  convicted offenses alone are sufficient to deny parole forever has

6  been rejected by the California Supreme Court as demonstrated by

7  current state court decisions. In short:

8          Yet, the predictive value of the commitment offense
           may be very questionable after a long period of time...
9          The Governor's assumption that a prisoner may be deemed
           unsuitable for release on the basis of the commitment
10         offense alone is correct, but the proposition must be
           properly understood. The commitment offense is one of
11         only two factors indicative of unsuitability a prisoner
           cannot change (the other being his Previous Record of
12         Violence). Reliance on such an immutable factor without
           regard to or consideration of subsequent circumstances
13         may be unfair. (**In re Scott** (2005) 34 Cal.Rptr.3d 905,
           919-920, quoting **Irons v. Warden** (E.D.Cal. 2005) 358
14         F.Supp.2d 936, 947).

15

16      The California Supreme Court has previously advised, even

17  where the passage of time is not a factor and the assessment made

18  by an expert, predictions of future dangerousness are exceedingly

19  unreliable. (**People v. Murtishaw** (1981) 29 Cal.2d 733, 768).

20  Such predictions then are exceedingly unreliable and as such,

21  are an unreasonable basis for making a public safety threat

22  assessment.

23      Application of the principle is exemplified by the recent

24  Superior Court decision in **Rosenkrantz**, a well-know saga ending

25  with the California Supreme Court's denial of review and the

26  subsequent release of Robert **Rosenkrantz**. It demonstrates the

27  practical application of the "otherwise arbitrary" Portion of

28  the "some evidence" rule and also informs what the extent of the

1  liberty interest is, even in a case such as **Rosenkrantz** where

2  the circumstances of the offense were arguably more egregious

3  than the typical second-degree murder. **Rosenkrantz** bought an

4  Uzi, practiced with it, waited outside the victim's house all

5  night and when he came out in the morning, shot him ten times,

6  some five of the shots after the victim lay on the ground mortally

7  wounded, and then bragged about it and posed with the Uzi. Given

8  the decision in this case, it is clear that use of the offense as

9  "some evidence" to deny parole has outer limits.

10  In another affirmative statement of what state law requires the

11  California Supreme Court recently remanded case to the Court of

12  Appeal with direction to address specific issues. The Court of

13  Appeal was instructed to vacate its summary denial and to issue an

14  order to show cause why the Governor did not abuse his discretion

15  in reversing the Board's finding that the Petitioner was suitable

16  for parole, why "some evidence" in the record supported the

17  determination, and why the Petitioner was not entitled to release

18  on parole (See also In re **SINGLER**, 2008 Cal.App. LEXIS 2008 Thrid

19  District Appellate Court). In that case, as in **Rosenkrantz**,

20  there was evidence of premeditation. **In re Wen Lee**, (2006) 143

21  Cal.App.4th 1400, the Court of Appeal, ordering the Petitioner

22  released explained:

23      [T]he test is not whether some evidence supports the
    <u>reasons</u> the Governor cites for denying parole, but

24      whether some evidence indicates a parolee's release
    unreasonably endangers public safety. (Id at 13963)

25      (Underline substituted for original italics emphasis).

26  Similarly, in yet another case, the court explained that

27  continued reliance on aggravating facts of the crime violated

28  due process and no longer amounted to "some evidence" supporting

1 denial of parole. **In re Jeffrey David Elkins** (2006) 144 Cal.App.4th

2 475. Like the Superior Court in **Rosenkrantz**, **Elkins** cited **Irons**

3 **v. Warden** (E.D.Cal. 2005) 358 F.Supp.2d 936 (reversed on other

4 grounds in 512 F.3d 536; **Irons v. Carey**, No. 05-15275, 2007

5 WL2027359, at *3 (9th Cir. July 13, 2007)); **Irons v. Carey**, (9th

6 Cir. 2005) 408 F.3d 1165, No. 05-15275).

7    Many federal courts have also found **Biggs** to correctly apply

8 Supreme Court law; e.g., **Rosenkrantz v. Marshall** (C.D.Cal.

9 2006) 444 F.Supp.2d 1063 [Nobody elected the BPT commissioners

10 as sentencing judges.]; **Martin v. Marshall** (N.D.Cal. 2006) 431

11 F.Supp.2d 1038 [The Board has capitulated to the no-parole policy,

12 denial of parole under California Governor's no parole policy

13 for murders denied inmate his due process right to be heard by

14 an impartial decision-maker] (citing **Coleman v. Board of Prison**

15 **Terms**, No. 96-0783 LKK PAN (E.D.Cal. 2005); **Sanchez v. Kane**

16 (C.D.Cal. 2006) 444 F.Supp.2d 1049. (See also In re **JAMEISON**,

17 (2007) Superior Court of Santa Clara County, Case No. 71194)

18    It is clear that both state and federal courts agree with **Biggs**

19 and the United States Supreme Court due process principles **Biggs**

20 relied upon **Morrissey v. Brewer**, 408 U.S. 471 (1972), **Greenholtz**,

21 **Allen**, **Hill**, and **Lankford v. Idaho** 500 U.S. 110 (1991) (quoting

22 **Joint Anti-Fascist Refugee Comm. v. McGrath**, 341 U.S. 123 (1951).

23 As the Supreme Court has explained:

24       …rules of law may be sufficiently clear for habeas corpus
      purposes even when they are expressed in terms of a

25       generalized standard rather than as a bright-line rule.
      (**Williams v. Taylor**, 529 U.S. 362, 382 (2000)).

26

27    As Petitioner argued in his state petitions the Board found,

28 and the state courts upheld, the determination that there was

1  "some evidence that Petitioner's commitment offense rendered

2  him an unreasonable risk to public safety and denial of parole

3  was warranted. However, there is no evidence (not a modicum or

4  a scintilla of reliable evidence), in the record that Petitioner

5  is a current unreasonable threat to society. Instead, the record

6  reflects a complete absence of violence for more than 25 years.

7      The board did not point to one thing that indicated Petitioner

8  is <u>currently</u> an <u>unreasonable</u> threat to society. <u>Rosenkrantz v.</u>

9  <u>Marshall</u> held:

10          Second, in this case, the circumstances of Petitioner's
            crime do not amount to some evidence supporting the
11          conclusion that Petitioner poses an unreasonable risk
            of danger if released. As discussed ante, "in the parole
12          context, the requirements of due process are met if
            some evidence supports the decision." Significantly, the
13          evidence underlying the decision must be supported by
            "some indicia of reliability." <u>Biggs</u>, 334 F.3d at 914
14          (Internal quotations omitted); <u>Caswell</u>, 363 F.3d at 839;
            see <u>Hill</u>, 472 U.S. at 455-456. Otherwise it does not
15          constitute "some evidence." See Gerald L. Neuman, The
            Constitutional Requirement of Some Evidence, San Diego
16          L.Rev. 631, 663-664 (1988) (noting that "[e]vidence
            that the respondent was alive at the time in question
17          is usually relevant to any charge against her. The [due
            process] protection of the 'some evidence' requirement
18          demands more than that — less than legal 'sufficiency'
            of evidence, but more than a trivial charade.").
19          (<u>Rosenkrantz</u> 444 F.Supp.2d at 1083-1084)

20      While only Supreme Court precedent is controlling under the

21  AEDPA, other case law is persuasive authority for purposes

22  of determining whether a particular state court decision is

23  an unreasonable application of Supreme Court law. (<u>Vlasak v.</u>

24  <u>Superior Court of California ex rel. County of Los Angeles</u>, 329

25  F.3d 683, 687 (9th Cir. 2003) (quoting <u>Luna v. Cambra</u>, 306 F.3d

26  954, 960 (9th Cir. 2002) (Internal quotation marks and citations

27  omitted), amended, 311 F.3d 928 (9th Cir. 2002)); see <u>Bruce v.</u>

28  <u>Terhune</u>, 376 F.3d 950, 956 (9th Cir. 2004) ("Although only the

1 Supreme Court's precedents are binding on state courts under
2 AEDPA, our precedents may provide guidance as we review state-
3 court determinations.")

4    Petitioner could again argue that the continued reliance on the
5 unchanging factors of his offense is a violation of due process
6 but as his arguments have not carried any weight with the courts
7 thus far he instead cites to a series of rulings from state and
8 federal courts which support his contentions (Please note: 3 of
9 the U.S. Districts of California are represented herein, as well
10 as the 9th Circuit and the U.S. Supreme Court, 3 State Appellate
11 Courts and the California Supreme Court). These rulings clarify
12 how and why reliance upon circumstances of more than 26 years past
13 to predict dangerousness amounts to a due process violation.

14     While relying upon petitioner's crime as an indicator of
    his dangerousness may be reasonable for some period of
15     time, in this case, continued reliance on such unchanging
    circumstances - after nearly two decades of incarceration
16     and half a dozen parole suitability hearings - violates
    due process because petitioner's commitment offense has
17     become such an unreliable predictor of his present and
    future dangerousness that it does not satisfy the "some
18     evidence" standard. (**Rosenkrantz** at 1084)

19     After nearly twenty years of rehabilitation, the ability
    to predict a prisoner's future dangerousness based simply
20     on the circumstances of his or her crime is nil. See
    **Johnson v. Finn** 2006 WL 195159 *8 n. 3 (E.D.Cal. 2006)
21     (stating that "the seriousness of the crime had predictive
    value for the dangerousness of petitioner's release for
22     the first, second, perhaps third suitability hearing. But
    as the years go by, this factor loses its predictive
23     value in light of the growing experience to the contrary
    (assuming petitioner's record in prison is exemplary);
24     **Irons**, 358 F.Supp.2d at 947 n. 2 ("To point, it is true,
    the circumstances of the crime and the motivation for
25     it may indicate a Petitioner's instability, cruelty,
    impulsiveness, violent tendencies and the like. However,
26     after fifteen or so years in the caldron of prison life,
    not exactly an ideal therapeutic environment to say the
27     least, and after repeated demonstrations that despite
    the recognized hardships of prison, this petitioner does
28     not possess those attributes, the predictive ability of

1    the circumstances of the crime is near zero.") (Id)

2    Importantly, Petitioner has served 25 years at this point in

3  time (23 at the time of the hearing) for a total of 33 years and

4  4 months when his good time credit is applied.

> Even the California courts have said as much. **Shaputis**,
> 135 Cal.App.4th at 231-232, 37 Cal.Rptr.3d 324 ("The only
> evidence before the BPT was that [the inmate] had more
> than a decade of demonstrated commitment to remaining
> sober, and there was not a scintilla of violence in his
> nearly two decades of incarceration. Accordingly, the
> BPT's conclusion the inmate remained a danger to society,
> to the extent it was premised on a former lifestyle that
> all of the evidence showed was a historical relic, is
> so lacking in any medical, psychological or behavioral
> evidentiary support that it is arbitrary and capricious
> within the deferential standards...") (Id at 1084).

> **Scott**, 133 Cal.App.4th at 595, 34 Cal.Rptr.3d 905
> ("The commitment offense can negate suitability only
> if circumstances of the crime reliably established by
> evidence in the record rationally indicate that the
> offender will present an unreasonable public safety risk
> if released from prison. Yet, the predictive value of
> the commitment offense may be very questionable after a
> long period of time.") (Id at 1085)

> Petitioner's case is exactly what **Biggs** envisioned when
> it stated that repeated refusals to grant a parole release
> date to an inmate with an exemplary post-conviction
> record may violate the prisoner's due process rights.
> **Biggs**, 334 F.3d at 913. (Id at 1086).

> The evidence of Petitioner's outstanding performance
> while incarcerated is particularly significant. As the
> Supreme Court has recognized, "[t]he behavior of an
> inmate during confinement is critical in the sense that
> it reflects the degree to which the inmate is prepared
> to adjust to parole release" **Greenholtz**, 442 U.S. at 15,
> 99 S.Ct. 2100. (Id)

> Regardless of whether the BPT ever was entitled to rely
> upon the commitment offense to find that this particular
> petitioner posed an unreasonable risk of danger and was
> unsuitable for parole, under these unusual circumstances,
> the BPT's continued reliance on the commitment offense
> violates due process because it resulted in an arbitrary
> decision and because the facts surrounding the offense
> do not now constitute "some evidence" with "some indicia
> of reliability" of petitioner's dangerousness. See **Hill**
> 472 U.S. at 455, 105 S.Ct. 2768; **Biggs**, 334 F.3d at 917;
> **Irons** 358 F.Supp.2d at 947. (Id)

**Masoner v. State**, 2004 WL 1080177 *1-2 (C.D.Cal. 2004) ("Although the gravity of the commitment offense and other pre-conviction factors alone may be sufficient to justify the denial of a parole date at a prisoner's initial hearing, subsequent BPT decisions to deny a parole date must be supported by some post-conviction evidence that the release of an inmate is against the interest of public safety. **Masoner**'s successful rehabilitation and spotless prison record, in combination with his having served 21 years and the type of crime usually associated with such a sentence under the Universal Terms Matrix indicate that there is no legitimate post-conviction justification for the BPT's repeated refusal to grant him a parole date.") (Id)

**Johnson**, 2006 WL 195159 at *8 ("The characterization of Petitioner's crime as an execution style-murder is accurate. However, as discussed above, the 2001 hearing was Petitioner's twelfth suitability hearing. It had been 24 years since petitioner committed the murder. As found by the 2001 hearing panel, petitioner had done everything he could in prison to better himself. Under these circumstances, the nature of the offense had lost any predictive value and the continued reliance on it to find petitioner unsuitable violated due process. Accordingly, the court finds that this factor was not supported by "some evidence") (Id 1086-87)

Because there is no reliable evidence supporting the BPT's conclusion that petitioner is unsuitable for parole, that determination violates due process. See **Hill**, 472 U.S. at 455, 105 S.Ct. 2768. (Id at 1087)

The state court's determination to the contrary was based upon an unreasonable determination of the facts in light of the evidence presented during the parole hearing and amounted to an unreasonable application of clearly established Supreme Court precedent. See **Hill**, 472 U.S. at 455, 105 S.Ct. 2768; **Taylor v. Maddox**, 366 F.3d 992, 999-1000 (9th Cir.) cert. denied, 543 U.S. 1038, 125 S.Ct. 809, 160 L.Ed.2d 605 (2004). (Id)

Accordingly, petitioner is entitled to relief. **Irons**, 358 F.Supp.2d at 947-951 (granting habeas relief where the BPT improperly relied upon the unchanging circumstances of the commitment offense in finding petitioner unsuitable for parole in his fifth parole suitability hearing, and also asserted that Petitioner needed more therapy, a conclusion that lacked any support n the record. (Id)

**Saif 'Ullah**, 2005 WL 1555389 at *13-16 (granting habeas relief where the record contained no evidence supporting the BPT's decision that petitioner was a danger to society and unsuitable for parole based on (a) his commitment

1     offense, (b) his prior criminal history, and (c) a rules
2     violation which resulted when, based upon his religious
    beliefs, petitioner refused to cut his hair). (Id)

3     As in each of the cases listed above, the question is not
4 whether or not there is "some evidence" supporting the board's
5 reliance of the circumstances of the offense, but rather whether
6 there is "some evidence bearing and indicia of reliability" that
7 the circumstances cited by the Board reliably indicate that
8 petitioner is a Current, Unreasonable Threat to Pubic Safety.

9     At issue is that the Board relied upon "facts" that are not
10 true, ignoring the findings of the Second District Appellate Court
11 on direct appeal. Additionally, He has positive work reports
12 and a history of rehabilitative programming including substance
13 abuse, other self-help, and vocational training resulting in
14 marketable job skills and employment opportunities.

15 **CONCLUSION**

16     Petitioner has presented several 'colorable claims' in his
17 state petitions addressing violations of Constitutional Due
18 Process protections.

19 1. The unchanging circumstances of the offense and prior conduct
20    no longer amount to "some evidence bearing an indicia of
21    reliability" that he is currently an unreasonable risk to
22    pubic safety.

23 2. He belongs to a class of prisoners which the state and federal
24    courts have ruled were victims of a blanket sub rosa No Parole
25    Policy.

26 3. Because he has been denied an Evidentiary Hearing by the state
27    courts their determinations were an unreasonable determination
28    of facts.

1      The issues involved in this case are complex. Too complex for

2  a pro per litigant to address adequately. Based upon recent Ninth

3  Circuit findings (upheld by the U.S. Supreme Court), **Agyeman v.**

4  **Corrections Corp. of America**, (9th Cir. 2004) 390 F.3d 1101 and

5  **Baja v. Ducharme**, (9th Cir. 1999) 187 F.3d 1075, cert. denied 528

6  U.S. 1079 (2000), appointment of council is warranted in this

7  case.

8      Petitioner therefore respectfully prays this Honorable

9  Court issue an order to show cause, appoint counsel, order an

10  evidentiary hearing, and ultimately grant him the relief to which

11  he is entitled, i.e., a ruling that there is no reliable evidence

12  that he is unsuitable and therefore he should be released from

13  custody forthwith.

14  Respectfully submitted this 9th day of May 2008.

15

16  *D. Patterson*

17  DAVID PATTERSON
    Petitioner In pro per

18

19

20

21

22

23

24

25

26

27

28

1                 **DECLARATION OF SERVICE BY MAIL**
                   (By a person in state custody)

2                 (Fed.R.Civ.P.5; 28 U.S.C. § 1746)

3 RE: DAVID PATTERSON v. B. CURRY, Case No:

4      I, DAVID PATTERSON, C-59234, declare: I am a resident of the

5 State of California, County of Monterey. I am over the age of 18

6 years and I am a party to the within action. My residence address

7 is P.O. Box 689, Soledad, California, 93960-0689.

8      On May  11  , 2008 I served the foregoing **PETITION FOR WRIT OF**

9 **HABEAS CORPUS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** on

10 the parties listed below by placing a true copy thereof enclosed

11 in a sealed envelope with first class postage fully prepaid In

12 the United States mail at Soledad, California, addressed as

13 follows:

14 Original + One Copy

15 UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

16 450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102-3483

17

18      There is regular mail delivery by the U.S. Postal Service

19 between the place of mailing and the places so addressed.

20      I declare under penalty of perjury under that the foregoing

21 is true and correct.

22 Executed this  11  day of May 2008, at Soledad, California.

23

24        *D. Patterson*
     DAVID PATTERSON

25     Petitioner In pro per

26 PLEASE FILE ACCORDING TO THE ''MAILBOX RULE" **HOUSTON V. LACK**

27 (1987) 108 S.Ct. 2379; **KOCK V. RICKETTS** (9th Cir. 1995) 68 F.3d

28 1191, ON THE DATE INDICATED ABOVE.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21                              Exhibit A
22                        Supreme Court Denial
23
24
25
26
27
28

Court of Appeal, Second Appellate District, Div. 4 - No. B203812
**S161365**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re DAVID PATTERSON on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

APR 3 0 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**GEORGE**
Chief Justice